IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**BILLY BERGERON, #73894**                                              **PETITIONER**

**V.**                                         **CIVIL ACTION NO. 2:17-CV-00119-KS-JCG**

**JACQUELYN BANKS**                                                   **RESPONDENT**

## REPORT AND RECOMMENDATION

BEFORE THE COURT is the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, filed by Petitioner Billy Bergeron. The Petition challenges Bergeron's 2015 conviction for child molestation. Having considered the briefing, the record, and relevant legal authority, the undersigned United States Magistrate Judge recommends that Bergeron's request for habeas corpus relief be DENIED.

## BACKGROUND

A.   <u>Procedural History</u>

In 2015, a jury in Jasper County, Mississippi, found Bergeron guilty of molesting his granddaughter. *See* Jasper County Circuit Court Cause No. 214-22K; *see* Miss. Code. Ann. § 97-5-23(1) (offenses affecting children, fondling a child). The Circuit Court sentenced Bergeron "to serve a term of fifteen (15) years under the supervision, direction and control of the Mississippi Department of Corrections. Said sentence is to run day-for-day, and this sentence shall not be reduced or suspended, nor shall the Defendant be eligible for parole, probation or early release." (ECF No. 17-2, at 19).

Bergeron appealed. Bergeron's appellate counsel from the Office of State Public Defender, Indigent Appeals Division, filed a brief pursuant to *Lindsey v. State*, 939 So. 2d 743 (Miss. 2005), asserting that he was unable to find any arguable issues for appeal. (ECF No. 17-6). The Mississippi Court of Appeals afforded Bergeron forty days to file a *pro se* brief if he so desired. (ECF No. 16-3, at 1). Bergeron did not. On June 21, 2016, the Mississippi Court of Appeals affirmed the judgment of the Circuit Court in a written opinion, finding no arguable issues for appellate review. *See Bergeron v. State*, 196 So. 3d 173 (Miss. Ct. App. 2016) (Cause No. 2016-KA-00467-COA).

On January 30, 2017, Bergeron filed an application with the Mississippi Supreme Court, requesting leave to pursue postconviction collateral relief in the trial court. Bergeron alleged the following assignments of error:

1. He received ineffective assistance of trial counsel;
2. The Circuit Court erred by admitting unauthenticated evidence;
3. The prosecution failed to prove essential elements of the indictment; and
4. He received an illegal sentence.

(ECF No. 17-9, at 4-21) (Cause No. 2017-M-00121).

The Mississippi Supreme Court denied the application, finding that Bergeron waived claims (2) and (3) because those arguments were not made on direct appeal as required by Mississippi Code Ann. Section 99-39-21(1). (ECF No. 16-2, at 1). The Mississippi Supreme Court summarily found that Bergeron failed to present a

substantial showing of the denial of a state or federal right with respect to his ineffective assistance of counsel claim. *Id.* (citing Miss. Code Ann. § 99-39-27(5)). The Mississippi Supreme Court rejected Bergeron's claim that his sentence was illegal. *Id.* at 1-2.

Bergeron filed the instant 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus *pro se* on July 12, 2017, raising the same four assignments of error he alleged before the Mississippi Supreme Court.

B.   <u>Summary of Testimony and Evidence</u>

At trial, Bergeron's then nine-year-old granddaughter was found by the Circuit Court to be of tender years and competent to testify as a witness. She testified that her "Pawpaw did bad stuff to [her]," which she explained meant "playing with [her] private." (ECF No. 17-3, at 142, 146-47). The child testified that this happened "like four" times and began when she was seven. *Id.* at 147. The victim testified that Bergeron used his hands to touch her chest underneath her clothes. *Id.* at 144. The child testified that Bergeron used his hands to play with her "private" below her tummy, underneath her clothes. *Id.* at 142-147. She testified that it hurt because Bergeron had sharp fingernails. *Id.* at 144. She testified that Bergeron put a "peach thing" that vibrated on top of her clothes on her private below her tummy. *Id.* at 144-45. The child testified that Bergeron retrieved the item from by his bed. *Id.* at 145. The child identified a dildo entered into evidence by the State as "the thing that he had" that he put on top of her clothes that was vibrating. *Id.* The victim was asked whether Bergeron showed her anything else, and she said

3

no. *Id.* She was asked specifically whether they watched television, and she responded no. *Id.* at 146. The victim testified that she told her mother, Bergeron's daughter, about the incident about a week later. (ECF No. 17-3, at 146-147).

The child's mother took her to the Jasper County Sheriff's Department to make a report. Criminal investigator Chris Thompson interviewed the victim on March 14, 2013. *Id.* at 94. The Sheriff's Department referred the child to be interviewed by a forensic interviewer at Child Advocacy Center at Wesley House in Meridian, Mississippi. *Id.* Forensic interviewer, Dr. Olga Kahle, interviewed the victim on March 18, 2013. *Id.* at 120-21.

On March 19, 2013, Investigator Thompson obtained Bergeron's consent to search the inside and outside of his residence. (ECF No. 17-4, at 6). Investigator Thompson testified that one of the items the officers were searching for was a dildo that the child said would be found next to Bergeron's bed. *Id.* at 10, 13. A dildo was found next to Bergeron's bed under a pile of clothes. *Id.* at 13. Investigator Thompson observed that Bergeron had long fingernails and took photographs of Bergeron's hands and long fingernails. (ECF No. 17-4, at 10-12, ECF No. 17-9, at 44). Investigator Thompson attempted to access Bergeron's DirectTV account to determine if pornographic movies had been viewed but "it was locked." (ECF No. 17-4, at 21). Thompson testified that he did not subpoena Bergeron's DirectTV records because "after finding the dildo, it pretty much gave me evidence of what I was looking for." *Id.*

DISCUSSION

A.  Standard of Review

Under 28 U.S.C. § 2254, a federal court may issue the writ of habeas corpus when a person is held in violation of the federal Constitution or laws, permitting a federal court to order the discharge of any person held by a state in violation of the supreme law of the land. *Frank v. Mangum,* 237 U.S. 309, 311 (1915).

1.  The Doctrines of Procedural Default and Procedural Bar

Before considering the merits of a petition under 28 U.S.C. § 2254 for writ of habeas corpus, the Court must first determine if all procedural steps necessary to preserve each issue raised for federal review have been taken. First, the petition must be timely filed with the Court in compliance with 28 U.S.C. § 2244(d)(1).[1] Second, a writ of habeas corpus may not be granted unless it appears that a petitioner has exhausted all available state court remedies. See 28 U.S.C. § 2254(b)(1).[2]

Similarly, federal courts have no jurisdiction to review a habeas corpus claim that is procedurally barred, which occurs when "the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision." *Roberts v. Thaler,* 681 F.3d 597, 604 (5th Cir. 2012). Thus, a federal court may not consider a habeas corpus claim when "(1) a state court [has] declined to address

---

[1] There is no challenge to the timeliness of the petition.
[2] There is no challenge to exhaustion.

[those] claims because the prisoner [has] failed to meet a state procedural requirement, and (2) the state judgment rests on independent and adequate state procedural grounds." *Maples v. Thomas,* 132 S. Ct. 912, 922 (2012).

A state procedural rule is "independent" when the state law ground for decision is not "interwoven with the federal law." *Michigan v. Long,* 463 U.S. 1032, 1040 (1983). To determine the adequacy of the state procedural bar, the Court must examine whether the state's highest court "has strictly or regularly applied it." *Stokes v. Anderson,* 123 F.3d 858, 860 (5th Cir. 1997). The petitioner "bears the burden of showing that the state did not strictly or regularly follow a procedural bar around the time of his appeal" and "must demonstrate that the state has failed to apply the procedural bar rule to claims identical or similar to those raised by petitioner himself." *Id.*

Whether a petitioner's claims are procedurally defaulted or procedurally barred, the way he may overcome these barriers is the same. First, he can overcome procedural default or bar by showing cause for it – and actual prejudice from its application. To show cause, a petitioner must prove that an external impediment (one that could not be attributed to him) existed to prevent him from raising and discussing the claims as grounds for relief in state court. *See United States v. Flores,* 981 F.2d 231 (5th Cir. 1993). To establish prejudice, a petitioner must show that, but for the alleged error, the outcome of the proceeding would have been different. *Pickney v. Cain,* 337 F.3d 542 (5th Cir. 2003).

Even if a petitioner fails to establish cause for his default and prejudice from its application, he may still overcome a procedural default or bar by showing that application of the bar would result in a fundamental miscarriage of justice. To show such a miscarriage of justice would occur, a petitioner must prove that, "as a factual matter, that he did not commit the crime of the conviction." *Fairman v. Anderson,* 188 F.3d 635, 644 (5th Cir. 1999). Further, he must support his allegations with new, reliable evidence – that was not presented at trial – and must show that it was "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 644.

    2. <u>Grounds Reviewed on the Merits in State Court</u>

When addressing claims that were reviewed on the merits in state court, the focus in a federal habeas proceeding is not whether there was an error in applying state law but instead whether there has been a denial of rights protected by the United States Constitution. *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). The federal courts do not function as super appellate courts over the states to review errors under state law. *See Mendiola v. Estelle,* 635 F.2d 487, 491 (5th Cir. 1981). The federal courts may not correct errors of state law unless they also violate the constitutional rights of an accused. *See Smith v. Phillips,* 455 U.S. 209, 221 (1981).

Even in matters affecting constitutional rights, federal courts have a very limited scope of review. The Court's authority to grant relief to a person held in

7

custody pursuant to a state judgment is narrowly circumscribed by 28 U.S.C. § 2254 (d), which provides that a writ of habeas corpus shall not be granted unless the state court adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* As summarized by the Fifth Circuit Court of Appeals:

> Because "§ 2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses have independent meaning," there are three ways a federal court can grant habeas relief: (1) if the state court decision was contrary to clearly established Supreme Court law; (2) if the state court decision involved an unreasonable application of clearly established Supreme Court law; or (3) if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. "AEDPA's standard is intentionally difficult to meet."

*Poree v. Collins,* 866 F.3d 235, 245 (5th Cir. 2017) (citing *Bell v. Cone,* 535 U.S. 685, 694 (2002) and *Woods v. Donald,* 135 S. Ct. 1372, 1376 (2015)).

B.    <u>Grounds Two and Three are Procedurally Barred</u>

The claims in Grounds Two and Three must be dismissed because they are procedurally barred. As Ground Two, Bergeron alleges:

> **The Circuit Court erred by admitting unauthenticated evidence.** The trial court allowed the State to present a dildo into evidence that was not the dildo described by the accused. *See* TR.80 (11-19), which

8

> duly shows that the dildo described by the accuser was
> pink with black stripes.

(ECF No. 1, at 7) (all sic is original).

As Ground Three, Bergeron alleges:

> **The prosecution failed to prove essential elements of the indictment.** There is no way that the State proved that Bergeron committed any crime from March 7th through June, 2013. Therefore, the State failed to prove all of the essential elements listed in the indictment.

*Id.* at 8.

The Mississippi Supreme Court found Grounds Two and Three procedurally barred by Mississippi Code Annotated section 99-39-21(1), which provides that

> [f]ailure by a prisoner to raise objections, defenses, claims, questions, issues or errors either in fact or law which were capable of determination at trial and/or on direct appeal, regardless of whether such are based on the laws and the Constitution of the state of Mississippi or of the United States, shall constitute a waiver thereof and shall be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver.

Miss. Code. Ann. § 99-39-21.

Bergeron has not addressed section 99-39-21(1) and has failed to carry his burden of showing inconsistent and irregular application of section 99-39-21(1). The Fifth Circuit has recognized that section 99-39-21(1) is an independent state procedural bar. *Stokes,* 123 F.3d at 860. Bergeron has not attempted to overcome the procedural bar by showing cause and actual prejudice. He has not proven that something external to him prevented him from raising the claims in Grounds Two and Three on direct appeal. Application of the procedural bar will not result in a

fundamental miscarriage of justice because Bergeron has not shown – with new and reliable evidence not available at trial – that he did not commit the crime of his conviction.

C.     Ground One: Ineffective Assistance of Counsel

Bergeron alleges that his trial counsel was ineffective for various reasons. When denying Bergeron permission to pursue postconviction collateral relief in the trial court, the Mississippi Supreme Court summarily addressed Bergeron's ineffective assistance of counsel claims and concluded that Bergeron failed to make a substantial showing of the denial of a state or federal right. In this federal habeas proceeding, the issue is whether Bergeron has demonstrated that the Mississippi Supreme Court's decision to reject his ineffective assistance claims involved an unreasonable application of clearly established United States Supreme Court law.

In *Strickland v. Washington*, the United States Supreme Court defined the standard by which ineffective assistance of counsel claims in federal habeas proceedings are to be measured. Pursuant to *Strickland*, a petitioner must show that his "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." 466 U.S. at 687 (1984); *see also Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (stating that satisfaction of the standard requires a showing that counsel's acts "fell below an objective standard of reasonableness"). In order to establish a deficiency, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id*. This Court's "scrutiny of counsel's performance must be highly

deferential" and it must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689; *see also Moawad v. Anderson*, 143 F.3d 942, 946 (5th Cir. 1998) (observing that the court "gives great deference to counsel's assistance, strongly presuming that counsel has exercised reasonable professional judgment").

"To meet the prejudice prong of the *Strickland* test, a petitioner may not simply allege but must 'affirmatively prove' prejudice." *Bonvillain v. Blackburn*, 780 F.2d 1248, 1253 (5th Cir. 1986) (citing *Celestine v. Blackburn*, 750 F.2d 353, 356 (5th Cir. 1984)). Further, a petitioner must not only prove that the outcome of his trial would have been different "but for counsel's alleged errors," but must also prove that " 'the result of the proceedings was fundamentally unfair or unreliable.' " *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

While establishing a claim of ineffective assistance of counsel under *Strickland* is difficult, "[e]stablishing a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

1. <u>Medical Examination</u>

Bergeron contends that a more thorough investigation by trial counsel would have impeached the testimony of Investigator Thompson and the victim.

11

Specifically, Bergeron claims that his trial counsel was ineffective because Bergeron "was unable to get the results of the sexual assault examination into evidence." (ECF No. 4, at 6). Bergeron believes that there was a medical examination of the victim and faults trial counsel for not investigating the matter, interviewing the medical personnel who performed the exam, and offering the exam records into evidence. *Id.* at 5-7. Bergeron alleges that proof that a medical exam occurred would have established to the jury that the victim and Investigator Thompson lied when they testified that there was no medical exam. *Id.* at 7.

Bergeron alleges that medical exam findings would have impeached Investigator Thompson's testimony that the child reported being cut on her vagina when Bergeron tried to insert his finger inside her. *Id.* at 6. Bergeron submits that the medical exam would show that there was no cut on the victim's vagina. *Id.* at 5-6, 8.

Bergeron has provided no proof that a medical exam of the victim occurred. Investigator Thompson specifically testified that there was no medical exam. (ECF No. 17-4, at 16-18, 85). Bergeron's trial counsel argued that the lack of medical evidence created reasonable doubt. (ECF No. 17-3, at 44; ECF No. 17-4, at 16-18). Trial counsel used the lack of a medical exam to bolster the argument that the police investigation was inadequate. Bergeron's speculation that there was a medical exam and speculation regarding what an exam would have shown cannot sustain a habeas claim. "[C]onclusory allegations of ineffective assistance of counsel

do not raise a constitutional issue in a federal habeas proceeding." *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000)

Even if a medical exam occurred, and even if that exam showed no signs of a cut on the victim's vagina, Bergeron has not affirmatively proven that medical evidence showing no cut on the victim's vagina would have made any difference in the outcome of his trial. Investigator Thompson was the only witness who testified that the child reported being "cut" by Bergeron's fingernails. The child testified that Bergeron's fingernails "hurt" her. (ECF No. 17-3, at 144). Dr. Kahle also testified that the child reported being "hurt" by Bergeron's fingernails. *Id.* at 131. The jury could have believed that Investigator Thompson's testimony that the child reported being "cut" as opposed to "hurt" was not a significant inconsistency or was an inaccurate summary of the child's report. Even if a medical exam existed that showed no cut, the jury could have believed that physical signs of abuse would not be found due to the lapse of time between when the crime occurred and when it was reported. Bergeron has not shown deficiency or prejudice under *Strickland*.

    2. <u>Mitigating Evidence and Witnesses</u>

Bergeron testified in his own defense. He criticizes his trial counsel for not presenting other witnesses for the defense. Specifically, Bergeron maintains that the jury should have heard evidence regarding the child's "sexual activities with persons other than Bergeron." (ECF No. 4, at 9). Bergeron submits that trial counsel was ineffective because he "refused to bring up any bad things concerning the child." *Id.* Bergeron alleges that his relationship with his daughter, the victim's

mother, was estranged because the mother raised her children in an environment of sex and drugs. *Id.* Bergeron believes trial counsel should have investigated and proven that "the alleged victim had knowledge of sex acts and had been involved in sexual activity prior to the allegation being made against Petitioner Bergeron." (ECF No. 17-9, at 19). Bergeron maintains that his wife and other witnesses were willing to testify regarding the child's living circumstances, her mother's influence on her, and Bergeron's character. *Id.* at 18.

Bergeron has generically identified a list of un-interviewed potential witnesses, but he only speculates as to the substance of their testimony. The burden under *Strickland* is much higher. A petitioner "must name the [uncalled witnesses] witness, demonstrate that the witness would have testified, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable." *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010). Constitutional error cannot rest on the naked assertion that trial counsel should have done more, for "speculations as to what [uncalled] witnesses would have testified is too uncertain." *Alexander v McCotter*, 775 F.2d 595, 602 (5th Cir. 1985); *see also Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002) ("[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative."). Trial counsel is entitled to the presumption that he made a strategic decision as to which witnesses to call. Bergeron's conclusory allegations do not overcome this presumption.

14

Even assuming Bergeron could have proven that the child "had knowledge of sex acts," he has not affirmatively proven that this evidence would have had any effect on the outcome of his trial. Proof that others molested the victim would not preclude the jury from concluding that Bergeron molested the victim. No reasonable jurist would find that the Mississippi Supreme Court's decision to reject Bergeron's arguments was an unreasonable application of *Strickland*.

### 3. DirectTV Records

Bergeron submits that "[i]n her initial statement the alleged victim stated that on multiple occasions Petitioner Bergeron had her watch nasty movies . . . ." (ECF No. 17-9, at 37). Bergeron notes that no "nasty movies" were found during the search of his home. *Id*. Bergeron maintains that his counsel was ineffective because he did not obtain Bergeron's records from DirectTV, which would have proven that no pornographic moves had been purchased. (ECF No. 17-4, at 22, 50).

Bergeron has not affirmatively proven that obtaining the Direct TV records would have made any difference in the outcome of his trial. This is because the victim testified at trial that she did not watch television with Bergeron during the encounter she described. Admission into evidence of DirectTV records showing no pornographic movies were ordered would not have impeached the witness's testimony.

15

4. <u>Sufficiency of the Indictment</u>

Bergeron argues that trial counsel should have challenged the sufficiency of the Indictment. (ECF No. 4, at 11). Bergeron takes issue with the date range contained in the Indictment, which charged that the crime occurred on or about January 2013 through June 2013. (ECF No. 1, at 8). Because the victim reported Bergeron on March 14, 2013, and had no further contact with Bergeron, Bergeron maintains that the Indictment was insufficient. (ECF No. 4, at 11).

The State was required to prove that the crime occurred sometime on or about January 2013 through June 2013. The State did this by proffering evidence that the incident occurred approximately one week before the crime was reported on March 14, 2013. Any objection to the sufficiency of the indictment by Bergeron's trial counsel would have been without merit. The failure to raise a meritless objection does not support a claim for ineffective assistance of counsel. *Clark v. Collins,* 19 F.3d 959, 966 (5th Cir. 1994).

D. <u>Ground Four: Illegal Sentence</u>

As Ground Four, Bergeron alleges that "the trial court was without authority to impose a sentence to be served day for day without probation or parole." (ECF No. 1, at 10). When denying Bergeron's claim that he was sentenced illegally, the Mississippi Supreme Court found as follows:

> [t]he circuit court sentenced Bergeron to 15 years in prison and said the "sentence is to run day-for-day, and this sentence shall not be reduced or suspended, nor shall [Bergeron] be eligible for parole, probation, or early

> release." The circuit court lacked statutory authority to limit parole; thus, the language purporting to do so has no legal effect. *Brown v. State,* 731 So. 2d 595, 598-99 (Miss. 1999). It is mere surplusage and does not bind the parole board. *Id.* at 599. But even though that language should not have been included, it does not render Bergeron's sentence illegal. *Norwood v. State,* 846 So. 2d 1048, 1053-54 (Miss. Ct. App. 2003). For that reason, we find claim (4) fails to present a substantial showing of the denial of a state or federal right.

(ECF No. 16-2, at 1-2).

State trial courts are accorded wide discretion in their sentencing decisions, and claims arising out of such decisions are not generally constitutionally cognizable and therefore not reviewable by the federal habeas court. *See Haynes v. Butler*, 825 F.2d 921, 923 (5th Cir.1987). Habeas relief may only be granted "where the petitioner is able to show that the sentence imposed exceeds or is outside the statutory limits, or is wholly unauthorized by law." *Id.* at 923-924. Bergeron has offered no precedent undermining the Mississippi Supreme Court's conclusion that the sentencing order's reference to parole was surplusage that would not affect the enforcement of the valid portion of the sentence. *See Kincaid v. State*, 711 So.2d 873, 876 (Miss.1998); *Cain v. State*, 337 So.2d 935, 936 (Miss.1976). The valid portion of the sentence is within the statutory limits of Mississippi Code Annotated 97-5-23(1). No federal law is at issue, and Bergeron is not entitled to habeas corpus relief on this Ground.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Local Uniform Civil Rule 72(a)(3)

> After service of a copy of the magistrate judge's report and recommendations, each party has fourteen days to serve and file written objections to the report and recommendations. A party must file objections with the clerk of court and serve them upon the other parties and submit them to the assigned district judge. Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection.

L.U. Civ. R. 72(a)(3); *see* U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen (14) days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED**, this the 5th day of November, 2019.

*s/ John C. Gargiulo*
JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE